IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Alice L. Roseboro, | ) | C/A No. 0:10-3267-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Comporium Communications, *Rock Hill Telephone Co.*; Mary Graveley; Tiffany Thompson; Louis Ridinger; Frank Marshall; Glen McFadden; and Jeff Bushardt, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Alice L. Roseboro ("Roseboro"), a self-represented litigant, filed this employment discrimination matter against the named defendants. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 112.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Roseboro of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to the defendants' motion. (ECF No. 113.) Roseboro responded in opposition.[1] (ECF Nos. 139, 143, & 151.) Also pending before the court are numerous motions filed by Roseboro, which include a motion seeking to have the defendants' motion for summary judgment dismissed (ECF No. 134), motions for contempt or default judgment as sanctions for various "hindrances" that plaintiff alleges

---

[1] Roseboro appears to affirmatively state that her response contained in ECF No. 139 is not in response to the defendants' motion for summary judgment. (ECF No. 178.) Roseboro appears to allege that that response is in opposition to the defendants' motion to dismiss; however, the court observes that the defendants have not filed a motion to dismiss, nor have they challenged, contrary to Roseboro's suggestion, her ability to proceed *pro se*. Regardless, the court has considered all of Roseboro's properly filed pleadings in making this Report and Recommendation.



were committed by the defendants (ECF Nos. 115, 129, 143, 146, 159, 162, & 169), and a motion for default judgment against a non-party (ECF No. 147).

Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion for summary judgment should be granted and Roseboro's motions should be denied.

## BACKGROUND

The crux of Roseboro's allegations appears to be that the defendants discriminated or retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. In her Amended Complaint, Roseboro's allegations include a myriad of incidents that she appears to allege demonstrate that the defendants unlawfully discriminated or retaliated against her based on her race, including (1) that after Roseboro spoke with a lawyer regarding warning(s) or write-up(s), which she challenges, she was moved from the front office where she provided walk-in customer service to the call center and was ordered for the first time in sixteen years' employment to take a purportedly random drug test; (2) that a year later, in October 2008, Roseboro was returned to the front customer service area and while Roseboro was in the front area the other white customer service representatives were provided with new cell phones that were activated to use, but Roseboro received an older model that was not activated; (3) around January 2009, Roseboro was moved back to the call center and her former customer service position was filled by the President's secretary's daughter who required more training than Roseboro; (4) that she was not acknowledged for compliments she received from customers, while her white peers were; and (5) that black individuals were not hired for the past nine years. Finally, Roseboro alleges that she was often informed that she was not answering enough calls and she often experienced problems



with her phone. Ultimately, Roseboro states that after eighteen years of employment, she felt forced to resign.

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and



look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory"). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).



In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.



C.   **Roseboro's Claims**

1.   **Timeliness and Exhaustion**

The defendants first argue that Roseboro's allegations consist of numerous discrete acts and that any events that occurred before December 14, 2008 are untimely. Additionally, they contend that the events in Roseboro's Amended Complaint that occurred before December 2008 were not included in her Equal Employment Opportunity Commission ("EEOC") charge and therefore were not exhausted. The court agrees.

A timeline of Roseboro's allegations raised to the EEOC is necessary to resolve the defendants' motion on this point. Roseboro filed an administrative charge with the EEOC on October 14, 2009, asserting claims of race discrimination and retaliation. Roseboro alleged that the discrimination occurred from December 27, 2008 through June 3, 2009. Specifically, Roseboro alleged the following:

> I worked for the above employer from March 1991, as a CSR until I was forced to resign my employment June 3, 2009. During my employment I was subjected to less favorable terms and conditions of employment than similarly situated White co-workers.
> December 2008, I complained of favoritism and discrimination. I believe I was retaliated against after complaining. December 2008, demo phones were given to employees to train on. I was given a phone that didn't work while White employees received phones that had been activated and did work. I was told I was not answering enough calls but answered all that came in on my line. I was also told I wasn't waiting on enough customers but it wasn't taken into consideration the type of service I was providing. February 2009 I was moved to the back office and a White lesser qualified employee was placed in my seat in the front office which was held vacant for five weeks while she received training. I was not acknowledged for compliments as were my White peers. Because of this unfavorable treatment I resigned my employment June 3, 2009.
> I believe I have been discriminated against because of my race, Black in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 112-8 at 3.) The EEOC issued its Dismissal and Notice of Rights on September 27, 2010. (ECF No. 112-14 at 2.)



Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). "A plaintiff's EEOC charge defines the scope of [his] subsequent right to institute a civil suit." Smith, 202 F.3d at 247. Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred).

"Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation marks and citations omitted). Therefore, a discrimination suit "is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge." Stehle v. Gen. Mills Rest., Inc., 875 F. Supp. 320, 323 (D.S.C. 1994) (Title VII). When a discrimination claim "exceed[s] the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof," it is procedurally barred. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (Title VII).



"At the same time, however, the exhaustion requirement should not become a tripwire for hapless plaintiffs. While it is important to stop clever parties from circumventing statutory commands, we may not erect insurmountable barriers to litigation out of overly technical concerns." Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012). The United States Court of Appeals for the Fourth Circuit has recently discussed the parameters for when different unlawful employment practices are considered "reasonably related" to those raised in an administrative charge. For example, "where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system,'" the charges are reasonably related and may be advanced in a subsequent civil suit. Id. (quoting Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir.1981)). Similarly, courts have permitted a claim raised in litigation that was not specifically described in the administrative charge to go forward "where both the EEOC charge and the [federal] complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." Id. (citing Smith, 202 F.3d at 248). On the other hand, when the claim raised in the district court litigation involves a different *form* of unlawful employment practice than the one described in the administrative charge, courts have found the claim not to be administratively exhausted. See, e.g., Jones v. Calvert Group, Ltd., 551 F.3d 297, 300-301 (4th Cir. 2009) (finding that claims of age, sex, and race discrimination were not exhausted where a charge alleged only retaliation); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (finding that claims of sex and color discrimination were not exhausted where a charge alleged only racial discrimination); Riley v. Tech. & Mgmt. Servs. Corp., Inc., 872 F. Supp. 1454, 1459-60 (D. Md. 1995) (finding that claims of sexual harassment and retaliation were not exhausted where a charge alleged only gender discrimination).

PJG

Moreover, in South Carolina, the charge must be filed within 300 days after an "alleged unlawful employment practice" occurred. 42 U.S.C. § 2000e-5(c), (e); <u>Jones v. Calvert Group, Ltd.</u>, 551 F.3d 297 (4th Cir. 2009). "[The timely filing of a charge] is mandatory: a violation not made the subject of a timely charge is 'the legal equivalent of a discriminatory act which occurred before the statute was passed' and is 'merely an unfortunate event in history which has no present legal consequences.'" <u>Venkatraman v. REI Systems, Inc.</u>, 417 F.3d 418, 420 (4th Cir. 2005) (quoting <u>United Air Lines v. Evans</u>, 431 U.S. 553, 558 (1977)). The failure to file a timely charge with the EEOC bars the claim in federal court. See <u>McCullough v. Branch Banking & Trust Co.</u>, 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.").

Here, Roseboro's allegations concerning events that occurred before December 2008 took place more than 300 days before she filed her charge of discrimination. These events are also outside of the time period identified in her charge and are not even mentioned in Roseboro's charge. There is no indication on this record that these incidents could be construed as constituting a continuing violation as described by the United States Supreme Court in <u>Morgan</u>. See <u>Morgan</u>, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); <u>cf.</u> <u>id.</u> at 117-19 (discussing the continuing violation theory and stating that "[g]iven . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment"). Accordingly, the only claims of discrimination or retaliation that are properly before the court include Roseboro's allegations regarding the telephones; Roseboro's relocation around January 2009 from front customer service



to the call center; failure to acknowledge her compliments during this time; being informed that she was not answering enough calls without considering other factors; and constructive discharge. But see id. at 113 (stating that "the statute [does not] bar an employee from using the prior acts as background evidence in support of a timely claim").

### 2.     Disparate Treatment Claims

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Here, Roseboro cannot establish a *prima facie* case of race discrimination, as she has presented no evidence supporting the third or fourth element. Roseboro has failed to show that she suffered an adverse employment action under controlling precedent. With regard to a disparate treatment claim, an adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). It must constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). With regard to Roseboro's allegations that she was moved from the front customer service



area to the back call center area, Roseboro has failed to demonstrate that this reassignment resulted in significantly different job responsibilities. See Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999) (stating that "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on her," and explaining that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action . . ."); see also James v. Booz-Allen & Hamilton. Inc., 368 F.3d 371, 376 (4th Cir. 2004). In fact, the only evidence in the record shows that she remained a customer service representative in the same office, working the same hours, and at the same rate of pay. (Roseboro Dep. 61:1-62:6, ECF No. 112-3 at 9-10; Ridinger Aff. ¶ 13 at 5, ECF No. 112-16 at 5.)

To the extent that Roseboro alleges that she was forced to resign or was constructively discharged, the only evidence in the record belies this contention. To establish that she was constructively discharged, Roseboro must show that the defendants created intolerable working conditions in a deliberate effort to force her to resign. Whitten v. Fred's, Inc., 601 F.3d 231 (4th Cir. 2010); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995). A constructive discharge occurs only when a reasonable person in the employee's position would have felt compelled to resign. See Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004). "An employee is protected from a calculated effort to pressure [her] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by [her] co-workers. [She] is not, however, guaranteed a working environment free of stress." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 n.2 (4th Cir. 2004).

Roseboro cannot establish constructive discharge on this record because it contains insufficient evidence that the defendants deliberately forced her to resign. See Whitten, 601 F.3d



at 248. As an initial matter, the court observes that Roseboro's resignation letter does not suggest that she was forced to resign; rather, Roseboro thanked the company, wished the company the best, and apologized for not providing two-weeks' notice. (ECF No. 112-4.) Viewing the record as a whole, and even considering the actions alleged by Roseboro in combination, Roseboro has failed to introduce any evidence to show that the defendants deliberately created an intolerable working environment in excess of that faced by her co-workers to force Roseboro to resign. See Honor, 383 F.3d at 187 n.2 (stating that constructive discharge theory protects an employee from a calculated effort to pressure him into resignation by imposing unreasonably harsh conditions, in excess of those faced by his co-workers).

Finally, Roseboro has failed to provide support for her general assertions that white employees were treated more favorably on certain occasions, and none is apparent from the record.[2] (Cf. Roseboro Dep. at 113-15, 150-51, ECF No.112-3 at 11-13, 14-15.) Accordingly, the court agrees with the defendant that Roseboro has failed to forecast evidence that would permit a reasonable inference of discrimination *based on race*. See Merritt, 601 F.3d at 294-95 ("Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination.") (internal quotation marks and citations omitted). The defendants are therefore entitled to summary judgment on this claim.

---

[2] Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that " [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Further, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).



### 3. Retaliation Claim

Roseboro's retaliation claim similarly fails. Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). In a typical retaliation case, a plaintiff must show that: "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland, 487 F.3d at 218. The defendant challenges Roseboro's ability to meet this test.

Roseboro appears to allege that her protected activity was an e-mail she sent in December 2008 complaining of the events that occurred in 2007 and 2008. Presumably, Roseboro is arguing that as a result of this e-mail she was moved from the front customer service area to the call center, did not receive her customer compliments, and was informed that she did not answer enough calls, all causing her to resign.

To establish that she suffered an adverse action with respect to a retaliation claim, a plaintiff must show that the adverse action was objectively material. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). The United States Supreme Court has held that Title VII's prohibition of adverse employment action taken in retaliation for protected activity "is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64. Rather, "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." Id. at 67. However, the anti-retaliation provision does not shield an employee from all retaliation, but rather only from retaliation that produces injury or harm. Id. Accordingly, to fall within the provision's protection, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination.' " Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). A plaintiff must show material adversity to separate the significant harms from the trivial, as "Title VII . . . does not set forth 'a general civility code for the American workplace.' " White, 548 U.S. at 68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). The test is an objective one and considers the reactions of a reasonable employee. White, 548 U.S. at 68. Further, "[c]ontext matters," and the significance of the adverse action must be analyzed under the circumstances particular to the plaintiff. See id. at 69. Thus, "an 'act that would be immaterial in some situations is material in others.' " Id. (quoting Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 661 (7th Cir. 2005)). The standard analyzes the challenged retaliatory act, not the underlying conduct that gave rise to the Title VII complaint. White, 548 U.S. at 69. The question is whether the challenged action was material from the perspective of a reasonable person in the plaintiff's position. Id. at 69-70.

Applying these standards to the allegations and record in this matter, Roseboro cannot demonstrate that the alleged actions in this matter were materially adverse; rather, they are "trivial harms." White, 548 U.S. at 68. Moreover, as discussed above, Roseboro cannot show that any of the alleged adverse actions made her working conditions so intolerable as to constitute a constructive discharge. Nor do any of them, viewed independently, meet the standard enunciated by the United States Supreme Court in White, since no reasonable employee would have been dissuaded from engaging in protected activity because of them. Similarly, Roseboro cannot show on the record presented that she was a victim of unlawful retaliation. See Merritt, 601 F.3d at 294-95 ("Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim

PJG

of intentional discrimination."). Accordingly, the defendants are entitled to summary judgment on Roseboro's retaliation claim.

**D.     Default Judgment**

To the extent that Roseboro's motions state that she is seeking contempt, like her previous motion for contempt, her motions seek sanctions and default judgment because no court order is at issue. Therefore, the court will address all of these motions accordingly.

In Roseboro's motions, she appears to allege that she is entitled to a default judgment because (1) the defendants have not responded to her response, ECF No. 139, (2) the defendants have not provided her with discovery, and (3) the defendants did not consult or notify her before filing their motion for summary judgment.[3] However, defendants are not required to file replies to responses. In fact, the Local Civil Rule 7.07 DSC provides that replies are discouraged. Further, these motions were all filed over ten months after the expiration of the discovery period and no party has sought or been granted an extension of this deadline. Additionally, the defendants are not required to consult or notify Roseboro before filing a motion for summary judgment regardless of whether she is *pro se* or represented. See Local Civil Rule 7.02 DSC. To the extent that Roseboro's motions are based on her assertions that some of the individual defendants are untruthful, these challenges do not provide a basis for default judgment. Finally, to the extent Roseboro seeks default judgment against the United States, such relief is not available against a non-party.

---

[3] Her motions also appear to argue extensively that the Clerk's Office may have misinterpreted a Local Rule and did not accept one of her filings via facsimile on one occasion, (ECF No. 139). However, Roseboro can demonstrate no prejudice, as this filing has been accepted and reviewed by the court. This is simply a non-issue that does not impact the merits of her claims. Moreover, this allegation would not entitled her to a default judgment against the *defendants*. Similarly, Roseboro's challenges to the charges on her PACER account do not result in a judgment in her favor against the *defendants*.



Upon a thorough review of the parties' filings, the court finds that Roseboro's allegations are insufficient to support her motions and sanctions, including default judgment, are not warranted.

### RECOMMENDATION

Based on the forgoing, the court recommends that the defendants' motion for summary judgment be granted (ECF No. 112) and that Roseboro's motions[4] be denied. (ECF Nos. 115, 129, 134, 143, 146, 147, 159, 162, & 169.) The court further recommends that Roseboro's remaining motions be denied, as the discovery period has passed, and terminated as moot in light of the court's consideration of all of Roseboro's filings. (ECF Nos. 144, 145, 159, & 178.) To the extent that Roseboro seeks to compel "charges of perjury," these motions (ECF Nos. 150 & 157) should be denied as such relief is not available. See Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution.").

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 22, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[4] Roseboro also has filed two "motion[s] for affidavit of prejudice" based on a purported hindrance. (ECF Nos. 122 & 128.) As it is unclear what relief Roseboro seeks in these motions, the court recommends that they be denied. To the extent that they are in support of her motions for sanctions or default judgment, the court recommends that they be denied for the reasons discussed above.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).